The additional assignment of error is, therefore, not well taken, and the motion for remand will be denied.

*Motion denied.*

MILLER, J., concurs.
BRYANT, J., not participating.

CITY OF CINCINNATI, APPELLANT, *v.* SMALLWOOD ET AL.;
BATES, APPELLEE.

(No. 8411—Decided March 10, 1958.)

*Mr. James W. Farrell, Jr.,* city solicitor, and *Mr. J. B. Grause, Jr.,* for appellant.

*Mr. Sol Goodman,* for appellee.

MATTHEWS, J.   On April 11, 1956, the plaintiff instituted this proceeding to appropriate real estate of Mary C. Hughes Bates, and others, under its power of eminent domain.   A trial was had in February 1957, to assess the value of the property to be taken, and the jury fixed $10,500 as the fair market value of the real estate of Mary C. Hughes Bates.   The plaintiff being dissatisfied with that valuation, appealed from the judgment to this court, claiming errors of the trial court in its rulings on the admissibility of evidence.   This court, finding no prejudicial error and that the verdict was not against the manifest weight of the evidence, affirmed the judgment, and the Supreme Court, on October 16, 1957, overruled plaintiff's motion to require this court to certify the record to it.

Thereafter, that is, on November 1, 1957, the plaintiff paid to the clerk of the Common Pleas Court the sum of $10,500 in accordance with the verdict of the jury.

A separate order was made directing the clerk to pay taxes, the amount of which had been determined, and to withhold an amount deemed sufficient to pay the taxes of 1957, which were a lien, but the amount of which had not then been determined; and the plaintiff was reimbursed in the sum of $11.55, which it had

expended for documentary stamps, leaving a balance in the hands of the clerk of $10,251.89.

On November 6, 1957, Mary C. Hughes Bates filed a motion for an order "distributing the amount of compensation, heretofore found due from said Parcel R-63." On that motion, the court, on November 27, 1957, entered the following order of distribution:

"This cause came on to be heard on the motion for distribution, and it appearing to the court, the judgment had been entered on February 26, 1957, for the amount of ten thousand, five hundred and 00/100 ($10,500.00) dollars, and that said money was paid into court on November 1, 1957, and that there is, therefore, due interest thereon at the rate of six (6%) per cent per annum from said date of judgment to the day when said fund was paid into court, to wit, the amount of four hundred twenty and 00/100 ($420.00) dollars, that there is, therefore, due to the property owner a total of ten thousand nine hundred twenty and 00/100 ($10,920.00) dollars.

"It further appearing that by prior order of this court, there was distributed on account of taxes and documentary stamps the amount of two hundred forty-eight and 11/100 ($248.11) dollars, leaving a balance due the property owner of ten thousand six hundred seventy-one and 89/100 ($10,671.89) dollars. It further appearing that the amount deposited remaining in the hands of the clerk is ten thousand two hundred fifty-one and 89/100 ($10,251.89) dollars, it is hereby ordered that said amount be paid over to the property owner, Mary C. Hughes Bates, or Goodman & Goodman, her attorneys, and that the plaintiff, city of Cincinnati, be required to deposit or pay to said Mary C. Hughes Bates or Goodman & Goodman, her attorneys, the additional amount of four hundred twenty and 00/100 ($420.00) dollars.

"Plaintiff excepts to the order to pay interest in am't of $420.00."

In due course the plaintiff appealed to this court from that order, and that is the order the validity of which is now under consideration. It will be observed that the only part to which exception was taken is the allowance of interest from the date

of the judgment on the verdict to the date when the amount of the verdict was paid to the clerk of courts.

The plaintiff filed with the original papers on this appeal the bill of exceptions showing the proceedings at the trial resulting in the verdict fixing the value of the real estate taken, and defendant's counsel argued that it shows that there was an actual taking of the property by the plaintiff before that time, and, as we understand his argument, that fact in some way justified the award of interest.

There is no doubt that if the duly constituted authority of a municipality, or any other body possessing the right of eminent domain, bypasses the judiciary, and proceeds to exclude or restrict the dominion and control of the owner over his property and uses it for a public purpose, such authority violates the constitutional right of the property owner and renders the municipality liable for the fair value of the property taken. *City of Norwood* v. *Sheen, Exr.*, 126 Ohio St., 482, 186 N. E., 102; *Smith* v. *Erie Rd. Co.*, 134 Ohio St., 135, 16 N. E. (2d), 310. It is argued that this is what occurred in this instance after the institution of this proceeding. We have read the bill of exceptions and find that it contains no evidence of a taking of the property by the plaintiff prior to the deposit of the assessed value. The most that it shows is a profert that a tenant would testify that "the officials of the city of Cincinnati called on him and told him to vacate, that they had acquired the property to tear it down." There is no evidence that this was followed by any physical invasion of the premises for any purpose, or no purpose. What was proferred was no more than stating in the past tense the ultimate result of the appropriation proceeding, and no evidence that the officials were authorized in any way to bind the plaintiff.

Furthermore, the only issue in an appropriation proceeding is the fair market value of the property sought. There is no issue of whether the municipality has taken the property. There is no burden upon the property owner to prove that his property has been taken, but when the property owner asserts that the municipality has already taken his property for a public purpose, the burden is upon him to prove his assertion. So

far as the record before us shows, no such cause of action was pleaded. We do not stop to consider whether such an issue could be raised in an appropriation proceeding, as there was no pleading or proof of such an issue in this case.

Assuming, however, that there was some interference with the owner's control of the property, we are of the opinion that there is no showing that there was any action indicating an intent to seize or take this property, other than in the orderly process of the law in this proceeding to appropriate.

We find nothing in the record that would impose any greater or different liability upon the plaintiff than that imposed by the · statutes relating to the appropriation of property for a public purpose.

By Section 719.15, Revised Code, it is provided that the court shall make an order as to the disposition of the deposit among those found entitled thereto. It is asserted that this is a judgment. There is no doubt that it is a final determination of the rights of the parties, and, therefore, answers the statutory · definition of a judgment.

Counsel calls the court's attention to Section 1309.03, Revised Code, providing for the rate of interest upon judgments, and argues that it is applicable to this judgment. We cannot concur with counsel. The language of that section is: "Upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of a contract, or other transaction, the creditor is entitled to interest at the rate of six per cent per annum, and no more." As we construe that section, it applies only to orders of court creating the relation of judgment debtor and judgment creditor. To satisfy the definition so that interest will run, the order must be definite, so that it could be enforced by execution. The court's order in an appropriation proceeding makes no such direction.

While the case of *Franklin Bank* v. *Bruns,* 84 Ohio St., 12, 95 N. E., 385, is dissimilar, in that it was an interpleaded action, it does shed light upon the proper construction of this statute providing for interest on judgments.

In 82 Corpus Juris Secundum, 720, Section 347, a general rule of statutory construction is stated in this language: "Un-

less a legislative intent to the contrary clearly appears, special or particular provisions control over general provisions, terms, and expressions."

Now, Section 1309.03, Revised Code, is a general statute, which must yield to any statute upon a particular subject. And the statutes governing the appropriation of property for public purposes are special, and other statutes on other subjects must yield to them. Section 719.21, Revised Code, in express terms defines the scope of the obligation created by Section 719.15, Revised Code. By Section 719.21 it is provided:

"When a municipal corporation makes an appropriation of property, and fails to pay for or take possession of such property within six months after the assessment of compensation is made, its right to make such appropriation on the terms of the assessment so made shall cease, and lands so appropriated shall be relieved from all encumbrance on account of any of the proceedings in such case, and the judgment or order of the court directing such assessment to be paid shall be void, except as to costs adjudged against the municipal corporation. Upon the motion of any defendant, such costs may be retaxed, and a reasonable attorney's fee paid to the attorney of such defendant, which, together with any other proper expenses incurred by the defendant, may be included in the costs."

It will be observed that failure by the municipality to pay within six months completely nullifies the obligation or right to complete the appropriation and to pay the assessed value of the land. The only obligation left is to pay the costs, expenses, and a fee to the property owner's attorney.

As this property was not taken for highway purposes, the owner could not be disturbed in his possession or title until he had been paid in money, or the payment secured to be paid by a deposit of money. Section 19 of Article I of the Ohio Constitution. And in obedience to that provision of the Constitution, the Legislature, by Section 719.16, Revised Code, postponed the time of the vesting of the title in the municipality until the assessed value was paid or deposited. The title and control of the property remained in the owner, with the right to the income therefrom. In legal theory, at least, and probably in the gen-

erality of instances, actually, the statutes provide complete protection to the property owner, as contemplated by the Constitution.

For these reasons, that part of the judgment providing for the payment of interest is reversed, and final judgment rendered for the plaintiff.

*Judgment accordingly.*

HILDEBRANT, P. J., and LONG, J., concur.