**OHIO DEPARTMENT OF NATURAL RESOURCES, Appellant and Cross–Appellee,**

**v.**

**HUGHES, Trustee, et al., Appellees and Cross–Appellants.**

[Cite as *Ohio Dept. of Natural Resources v. Hughes* (2001), 145 Ohio App.3d 202.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–00–054.

Decided Aug. 10, 2001.

204

*Kevin J. Zeiher* and *Duffield E. Milkie*, for appellant and cross-appellee.

*James T. Murray*, for appellees and cross-appellants.

PIETRYKOWSKI, Presiding Judge.

This case is before the court on appeal from the Erie County Court of Common Pleas, which awarded interest in favor of appellees/cross-appellants.[1] For the reasons that follow, we affirm in part, reverse in part, and remand.

This case stems from appellant's appropriation of approximately ten acres of appellees' undeveloped land that appellant has added to a state wildlife area known as the Sheldon Marsh State Nature Preserve.[2] The value of the ten acres was determined to be $993,900, $400,000 of which appellant was to pay in cash. Appellees agreed to take a charitable deduction for the remaining $593,900. Appellees eventually received the $400,000 in late May 2000.

Appellees moved for an award of interest from the time of the taking to the time that they ultimately received the cash, and the trial court granted interest to

---

1. Though both parties appealed, for ease of discussion, we shall refer to the Ohio Department of Natural Resources as appellant and C. Hughes *et al.* as appellees.

2. The facts of this case were fully set out in an earlier decision. See *Ohio Dept. of Natural Resources v. Hughes* (Nov. 30, 2000), Erie App. No. E–00–002, unreported.

appellees. It is unclear from the judgment whether the trial court awarded interest under R.C. 1343.03(A) or R.C. 163.17, since the court cited cases construing both statutes. In any event, the trial court found that appellees were entitled to interest on $400,000 from October 4, 1999 to May 31, 2000, amounting to $26,229.51. (The court found that October 4, 1999, was the day of the taking and that May 31, 2000, was the day that appellees were finally paid the $400,000.) In addition, the court awarded interest on the interest from June 1, 2000 until September 12, 2000 (the day of the judgment entry), amounting to $745.32. According to the judgment entry, the interest on the interest is to continue daily at a rate of $7.167 per day until all of the interest is paid. In sum, the court ordered appellant to pay to appellees $26,974.83 ($26,229.51 + $745.32) plus interest of $7.167 per day until paid. Appellant now contends that the trial court erred in awarding interest, setting forth the following two assignments of error:

## "FIRST ASSIGNMENT OF ERROR

"The trial court erred in awarding interest to the defendant, payable by the state of Ohio, due to the lack of specific statutory authority authorizing the imposition of interest.

## "SECOND ASSIGNMENT OF ERROR

"Even if interest is found to be properly chargeable to the state of Ohio, the time period used by the trial court for the calculation of interest was improper and contrary to law."

Appellees appeal as well, setting forth the following assignment of error:

## "ASSIGNMENT OF ERROR

"The court erred in using the value of cash changing hands in a property transfer to determine the amount of interest due, rather than the actual value of the property."

## I. APPELLANT'S APPEAL

We turn to appellant's first assignment of error, in which it claims that there is no statutory authority for awarding interest in this case. Because this assignment of error calls for us to review a legal question, we review it *de novo*. See *Castlebrook, Ltd. v. Dayton Properties L.P.* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811–812. Appellant claims that the trial court erred by awarding interest under R.C. 1343.03(A). That section provides:

"(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill,

note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

According to appellant, if statutory authority exists at all, it resides in R.C. 163.17, which provides:

"Where the agency has the right to take possession of the property before the verdict upon payment into court of a deposit, and a portion of said deposit may be withdrawn immediately by the owner, the amount of the verdict which exceeds the portion of the deposit withdrawable shall be subject to interest from the date of taking to the date of actual payment of the award.

"Where the agency has no right to take possession of the property before the verdict, if the award is not paid to the owner or deposited in court within twenty-one days after journalization of the verdict, interest thereafter shall accrue, except that where the owner appeals, interest shall not accrue until the agency takes possession."

■ For the reasons that follow, we find that R.C. 163.17, and not R.C. 1343.03, applies to this case.

■ First, interest may not be assessed against the state without statutory authority to do so. See *State ex rel. Montrie Nursing Home, Inc. v. Creasy* (1983), 5 Ohio St.3d 124, 126–127, 5 OBR 258, 259–261, 449 N.E.2d 763, 765–767; *State v. Penrod* (1992), 81 Ohio App.3d 654, 661, 611 N.E.2d 996, 1000. R.C. 1343.03(A) does not provide statutory authority to assess interest against the state. However, R.C. 163.17, which deals specifically with appropriations, allows interest to be awarded against the state under the circumstances outlined in the statute.

Second, R.C. 163.17, being newer and specifically directed towards appropriation actions, would control over the older, more general, provisions of R.C. 1343.03, unless the manifest intention of the legislature is to have the more general provision apply.[3] See *In re Petition to Annex 320 Acres to S. Lebanon* (1992), 64 Ohio St.3d 585, 594–595, 597 N.E.2d 463, 469–470; R.C. 1.51. See, also, *Cincinnati v. Smallwood* (1958), 106 Ohio App. 496, 500–501, 150 N.E.2d 310. Because R.C. 163.17 is newer and specifically directed towards appropriations,

---

3. R.C. 1343.03 was effective in 1962; R.C. 163.17 was effective in 1966.

and because there is nothing in R.C. 1343.03 that evinces a manifest legislative intent to have R.C. 1343.03 control, R.C. 163.17 controls.

 Finally, R.C. 1343.03 applies only to judgments *in personam, Penrod,* 81 Ohio App.3d at 659–660, 611 N.E.2d at 998–1000, and a judgment in an appropriation proceeding is a judgment *in rem, Pokorny v. Local No. 310, Internatl. Hod Carriers Bldg. & Common Laborers Union of Am.* (1974), 38 Ohio St.2d 177, 179, 67 O.O.2d 195, 196, 311 N.E.2d 866, 868. For these reasons, we find that R.C. 163.17 controls.

 Appellant also argues in its first assignment of error that, even assuming that R.C. 163.17 controls, it does not authorize an award of interest because the judgment in this case did not arise out of a "verdict": it arose out of the trial court's finding that the reasonable value of the property was $993,900. See R.C. 163.17 (allowing for interest on "verdicts"). The remainder of the issues were settled by the parties. According to appellant, the term "verdict," as used in R.C. 163.17, applies only to findings of a jury. The term is not defined in R.C. Chapter 163.

Appellees disagree and point out that, beginning with *Boedker v. Warren E. Richards Co.* (1931), 124 Ohio St. 12, 176 N.E. 660, there is a line of cases holding that a finding of a court in a non-jury case is a "verdict" for purposes of statutes referring to verdicts. According to the syllabus in *Boedker:*

"1. Where an action at law is submitted to the court, trial by jury being waived by the parties, the finding of the court is the equivalent of a verdict of a jury and is to be governed by all statutes relating to verdicts." *Boedker,* 124 Ohio St. 12, 176 N.E. 660, at paragraph one of the syllabus.

This court followed *Boedker* in *Harbaugh v. Utz* (1958), 107 Ohio App. 495, 160 N.E.2d 358, and we agree that there is a virtually unbroken line of cases following *Boedker* and leading to *Harbaugh.*[4] However, the extent to which *Boedker* applies here is uncertain, as *Boedker* was decided in a completely different context (the time limitation for filing an appeal following a new trial motion), and it was based on a statute no longer existing. The fact that *Boedker* is not regarded as having general applicability today is evidenced by the fact that the case has not been cited since *Harbaugh* in 1958. Therefore, we find that *Boedker* is not controlling here. Nevertheless, for the following reasons, we find that R.C. 163.17 applies even though there was no jury verdict in this case.

---

4. Paradoxically, the Ohio Supreme Court did not follow *Boedker* in one of its own decisions. See *Hnizdil v. White Motor Co.* (1949), 152 Ohio St. 1, 4–5, 39 O.O. 350, 351–352, 87 N.E.2d 94, 96–97.

First, according to rules of statutory construction, words in statutes are to be given their ordinary and customary meaning. See R.C. 1.42 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Weiss v. Pub. Util. Comm.* (2000), 90 Ohio St.3d 15, 17, 734 N.E.2d 775, 778, quoting *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 673 N.E.2d 1351 (words in statutes are to be given their "usual, normal or customary meaning"). According to Black's Law Dictionary, "verdict" means "1. A jury's finding or decision on the factual issues of a case. 2. Loosely, in a nonjury trial, a judge's resolution of the issues of a case." Black's Law Dictionary (7 Ed.1999) 1554. Therefore, the ordinary meaning of the word "verdict" encompasses more than just a jury verdict and can, in fact, mean the judge's resolution of issues.

Second, and perhaps more important, in construing statutes, we must strive at all times to give effect to the intentions of the legislature. See, *e.g., State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 231, 736 N.E.2d 886, 888–889. The purpose of R.C. 163.17 is to provide for the payment of interest in order to compensate fully an individual whose property was taken by the government. *Cincinnati v. Dale* (1969), 20 Ohio St.2d 32, 49 O.O.2d 187, 252 N.E.2d 287, paragraph one of the syllabus; *Athens v. Warthman* (1970), 25 Ohio App.2d 91, 93–95, 54 O.O.2d 123, 124–125, 266 N.E.2d 583, 585. In other words, an individual is entitled to interest from the day he lost the use of his property to the date that the government paid him for his property. *Id.* Whether the taking was effected by means of a jury verdict, a settlement, or a court trial does not matter; in any event, an individual must be compensated for the time he did not have either use of his property or payment for it. For these reasons, we find that, even though R.C. 163.17 speaks of interest following a verdict, appellees were still entitled to interest in this non-jury case.

In sum, we hold that R.C. 163.17, and not R.C. 1343.03, controls in this case. Since the trial court found statutory authority to award interest, we affirm the trial court's judgment in that respect. Accordingly, appellant's first assignment of error is found not well taken.

To award interest under R.C. 163.17, the trial court must determine certain dates, such as the date that the government took possession of the property and the date that the landowner was paid. In its second assignment of error, appellant takes issue with the trial court's determination of these dates.[5] Since

---

5. Appellees contend that appellant may not challenge the trial court's determination of the dates because appellant did not raise this issue in the trial court. However, appellant has argued all along that R.C. 163.17 controls in this case. Since, to apply R.C. 163.17, the court

the trial court determined these dates based on its construction of the law, we review the second assignment of error *de novo*. *Castlebrook*, 78 Ohio App.3d at 346, 604 N.E.2d at 811–812.

■■■■ According to the first paragraph of R.C. 163.17, where the government takes land before the verdict in an appropriation case, the government must pay into court a partial payment as a deposit. That paragraph does not apply to this case, as appellant did not make a deposit or take the property until, at the earliest, October 4, 1999. (The date of the taking is an issue in this case.) Therefore, the second paragraph of R.C. 163.17 applies, which provides that interest begins to accrue if payment is not made within twenty-one days after the verdict (or, in this case, the court's judgment entry). However, if the landowner appeals, interest begins to accrue "when the agency takes possession." See R.C. 163.17. Since appellees appealed, interest in this case would begin to accrue when appellant took possession of the property.

■■■ Appellant contends that it did not take possession of the property until May 2000, when appellees withdrew the $400,000 that appellant had paid into court. However, the December 14, 1999 judgment entry memorializing the October 4, 1999 settlement provides that the date of the "acquisition" of the property was October 4, 1999. It also provides that taxes would be due on the property only until October 4, 1999. Since the December 14, 1999 judgment entry adopts appellant's proposed judgment entry setting forth the October 4 date, see *Ohio Dept. of Natural Resources v. Hughes* (Nov. 30, 2000), Erie App. No. E–00–002, unreported, 2000 WL 1752645, appellant cannot now claim that the date is any different. Therefore, we find that appellant took possession of the property on October 4, 1999, and the trial court was correct in finding that interest began to accrue on October 4, 1999.[6]

Next, we must determine the date on which interest stops running. R.C. 163.18 permits the agency to pay into court the amount of the jury award (or in this case, the value of the property as indicated in the December 14, 1999

---

must necessarily determine the starting and ending dates for interest, we find that appellant adequately raised this issue in the trial court.

6. Appellant contends that it did not take possession on October 4, 1999, because it did not record the December 14, 1999 judgment entry (which served as the deed) until June 2000. However, we agree with appellees and the trial court that, as between the parties to a real estate transaction, failure to record a deed does not void the transaction; recording of the deed serves only to protect a grantee in the event that the grantor ever attempts to convey an interest in the property to a third party. See *Wade v. Comstock* (1860), 11 Ohio St. 71, 81, 1860 WL 25. Therefore, we disagree with appellant that it did not have possession of the property until it recorded the judgment entry.

judgment entry). Once the agency does so, it is the responsibility of the clerk of courts to give notice of the payment to the landowner. R.C. 163.18 provides:

"At the time the agency makes a deposit or pays into court the jury award, the clerk of courts shall give notice by ordinary mail of such payment to the counsel of record of each owner and to the known address of owners not represented. Thereupon any owner may file with the court a motion for distribution. After reasonable notice to all parties and to any additional interested parties who become known to the court, the court shall hear evidence as to the respective interests of the owners in the property and may make distribution of the deposit or award accordingly."

Appellant paid the $400,000 into court on April 10, 2000. Appellees and the trial court make much of the fact that appellant did not notify appellees that it had paid the money into court, and it was not until May 8, 2000, that appellees realized that the money was available from the clerk of courts. After moving for a distribution of the award, appellees were finally able to withdraw the money on May 31, 2000. Since appellees did not receive the money until May 31, 2000, the trial court found that May 31, 2000, was the date that interest stopped running.

Appellant properly deposited the cash with the clerk of courts. It was then the clerk's responsibility to notify appellees that the money was on deposit. The clerk's failure to do so cannot be held against appellant. Therefore, since appellant made the funds available as of April 10, 2000, that is the day that the interest stops running.[7] Since we disagree with the trial court's determination of the ending date for interest, appellant's second assignment of error is found well taken.

In sum, we find that R.C. 163.17 applies, and it allows for interest at the rate indicated in R.C. 1343.03—ten percent per annum. See R.C. 163.17. We also find that, since appellees appealed the judgment, interest begins to run on the day that appellant took possession of the property. Since the December 14, 1999 judgment entry proposed by appellant and adopted by the court indicated that appellant took possession on October 4, 1999, that is the day that interest began to run. Interest stopped running on April 10, 2000, the day that appellant placed the funds on deposit with the clerk of courts pursuant to R.C. 163.18.

## II. APPELLEES' CROSS–APPEAL

In their cross-appeal, appellees contend that the trial court erred in awarding interest only on the value of the property that actually changed hands in cash—

---

7. Relying on *Fowler v. Wilford* (May 8, 1987), Erie App. No. E–86–50, unreported, 1987 WL 11106, appellant also contends that interest stops running from the day that appellees filed their appeal. However, *Fowler* is based on a construction of R.C. 1343.03. Because we have already decided that R.C. 1343.03 does not control in this case, *Fowler* is not persuasive.

$400,000. According to appellees, the trial court should have awarded interest on the entire value of the property—$993,900—which includes the $593,900 that appellees took as a charitable deduction. Again, we review this question of law *de novo*. See *Castlebrook*, 78 Ohio App.3d at 346, 604 N.E.2d at 811–812. Neither party has cited any case law that effectively resolves this issue, and the court's independent research has likewise failed to uncover such authority. We therefore resolve this issue by considering the purpose of the statute.

As indicated earlier, the purpose of R.C. 163.17 is to compensate a landowner who has neither possession of his property nor payment for it. See *Dale*, 20 Ohio St.2d 32, 49 O.O.2d 187, 252 N.E.2d 287, at paragraph one of the syllabus. If the government does not pay what it owes before taking the property, it must pay interest on what it owes. Interest starts to run the day that the landowner is deprived of the use of his property. In this case, appellees lost the use of their property on October 4, 1999. On that date, interest began to accrue on the money that appellant owed to appellees but had not paid—the $400,000. Also, the day that appellees were deprived of the use of their property, October 4, 1999, was the day that appellees had the charitable deduction available to them. Therefore, appellant should not be liable to appellees for interest on the portion of the value of the property that was used as a charitable deduction. Accordingly, the trial court did not err in awarding interest only on the $400,000 cash payment, and appellees' sole assignment of error is found not well taken.

On consideration whereof, we find that substantial justice was not done appellant, and the judgment of the Erie County Court of Common Pleas is affirmed in part, reversed in part, and remanded. The judgment of the trial court is reversed as it relates to appellant's second assignment of error and affirmed in all other respects. This case is remanded to the Erie County Court of Common Pleas to calculate the interest owed by appellant to appellees consistent with R.C. 163.17 and this decision. We find that substantial justice was done appellees, and the judgment of the Erie County Court of Common Pleas is affirmed as it relates to appellees' sole assignment of error.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

PETER M. HANDWORK and JAMES R. SHERCK, JJ., concur.