DECISION. *Page 3 
{¶ 1} Plaintiffs-appellants, New Concept Housing, Inc., and George B. Stewart (collectively, "New Concept"), appeal the judgments of the Hamilton County Court of Common Pleas in favor of defendants-appellees, United Department Stores Co., No. 1, Inc., ("UDS"), Thomas H. Bergman, and Cohen, Todd, Kite Stanford, LLP ("Cohen Todd"), in a lawsuit arising from the sale of an apartment complex in the 1980s.
 The Sale of Orleans East Apartments {¶ 2} Stewart and Harvey Bergman ("Bergman") were long-time business associates. Stewart was a principal shareholder of New Concept, and Bergman was a principal of UDS.
 {¶ 3} In the 1980s, Stewart and Bergman were involved in the ownership of an apartment complex in New Orleans called Orleans East Apartments ("the property"). They owned the property through an entity called Orleans East Partnership ("OEP").
 {¶ 4} In 1985, OEP sold the property to a buyer who ultimately defaulted on the terms of the purchase, requiring OEP to foreclose. Stewart and Bergman discussed selling the property after foreclosure, and they entered into negotiations with a man named Paul Singh. Under the proposed contract, Singh was to purchase the property from OEP, which would finance the transaction. Singh would have been required to repay principal and to pay OEP an annual percentage of operating profits. Singh would also have paid OEP a percentage of any profit from refinancing the property. The proposed contract with Singh ("the Singh deal") was never consummated.
 {¶ 5} Instead, the Stewart family decided to buy the property. On February 17, 1987, Bergman sent Stewart a "letter agreement" outlining the terms of the *Page 4 
proposed sale, which were substantially similar to the Singh deal. Under the letter agreement, OEP was to transfer the property to the Stewart family after OEP had repurchased it at the sheriff's sale.
 {¶ 6} As it turned out, OEP did not repurchase the property and sell it to the Stewarts. Rather, New Concept purchased the property directly from the sheriff's sale. To obtain the interest UDS had in the property, New Concept executed a promissory note in favor of UDS. The note and guaranty were drafted by Bergman's son, Thomas Bergman, who at that time was an attorney with the Cohen Todd law firm. New Concept was the obligor, and Stewart guaranteed payment of the debt.
 {¶ 7} The note called for a repayment of $225,000 in principal. It also required New Concept to annually pay UDS a percentage of its operating revenue, to pay UDS a percentage of funds received from any refinancing of the property to the extent that the refinancing funds exceeded a stated adjusted basis of $950,000, and to pay UDS a percentage of any sale proceeds. Under the terms of the note, New Concept's obligations continued until any arm's-length sale of the property by New Concept.
 {¶ 8} The terms of the promissory note differed from those of the Singh deal in two significant ways: under the note, UDS was entitled to an annual percentage of revenue, regardless of profitability, and to a percentage of funds from refinancing regardless of whether New Concept had any equity in the property.
 {¶ 9} Some time after the execution of the note, New Concept was provided with an "act of sale," a document that under Louisiana law was analogous to a deed. The act of sale reflected that OEP had conveyed any rights in the property to New Concept. A footnote in the act of sale stated that the terms of the February 1987 letter agreement would remain in effect. The copy of the act of sale contained in the record was signed by representatives of New Concept, but it was not signed by Bergman or other UDS partners. *Page 5 
 {¶ 10} Although the financial viability of the property was disputed, New Concept continued to operate it as an apartment complex, and it sent UDS annual financial statements in compliance with the terms of the promissory note. In 2004, New Concept obtained refinancing for the property. UDS then demanded payment consistent with the terms of the promissory note.
 The Lawsuits: Promissory Note vs. Letter Agreement {¶ 11} New Concept refused to make payment under the terms of the note, contending that it was bound only by the terms of the Singh deal as included in the letter agreement. In March 2005, New Concept filed a declaratory-judgment action, seeking a declaration that the letter agreement, and not the promissory note, had embodied the terms of the parties' agreement. And on July 13, 2005, New Concept filed a legal-malpractice claim against Thomas H. Bergman and Cohen Todd. UDS filed a counterclaim against New Concept for breach of the promissory note.
 {¶ 12} In August 2005, the property was badly damaged by Hurricane Katrina. When New Concept sought proceeds from its insurance carrier, UDS sent a letter to the insurer asserting an interest in the proceeds arising from New Concept's failure to pay on the promissory note. UDS also filed a motion to join the insurer as a party to the suit against New Concept. But soon after filing the motion, UDS withdrew any asserted interest in the insurance proceeds. New Concept ultimately sold the property to another entity owned by the Stewart family.
 {¶ 13} In addition to the declaratory-judgment action, New Concept sued UDS for fraud and for tortious interference with the insurance contract.
 {¶ 14} The trial court granted summary judgment in favor of Thomas Bergman and Cohen Todd on the malpractice claim. New Concept appealed, and this court dismissed the appeal for lack of a final appealable order.[1] Specifically, we *Page 6 
held that the trial court's order was not final because the declaratory-judgment claim had not been adjudicated.[2]
 {¶ 15} The case then proceeded to a jury trial, which resulted in a verdict of $273,078.00 in favor of UDS on its claim that New Concept had breached the promissory note. The court awarded UDS attorney fees and litigation expenses in the amount of $433,554.67, as well as prejudgment interest in the amount of $45,777.58. The jury rendered a verdict in favor of UDS on New Concept's claims for fraud and tortious interference with a contract.
 {¶ 16} In its first assignment of error, New Concept now argues that the trial court erred in failing to render a judgment on its declaratory-judgment claim. Although the assignment of error seemingly relates to a single issue, New Concept in fact raises numerous arguments. We address each in turn.
 The Alleged Failure to Declare the Parties' Rights {¶ 17} We begin with the issue that is explicitly raised in the assignment of error: whether the trial court erred in failing to declare the parties' rights under the various documents surrounding the sale of the property.
 {¶ 18} R.C. 2721.10 provides that "[w]hen an action or proceeding in which declaratory relief is sought under this chapter involves the determination of an issue of fact, that issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending."
 {¶ 19} In this case, New Concept sought a declaration of the parties' rights under the letter agreement, the act of sale, and the promissory note. The issues pertaining to those rights were tried to the jury, and the jury returned a verdict determining that the terms of the promissory note controlled. With respect to the *Page 7 
parties' rights under the documents, nothing remained for the trial court to determine.[3] Accordingly, the trial court did not err in failing to render a separate declaration of the parties' contractual rights.
 Jury Instructions {¶ 20} But New Concept argues that, even if the declaratory-judgment claim had been properly tried to the jury, the trial court erred by failing to instruct the jury to consider the three documents together.
 {¶ 21} A trial court is not required to give a jury instruction in the exact language requested by a party even if the proposed instruction is an accurate statement of the law.[4] A court may formulate its own language to communicate the same legal principles and may exclude instructions that it finds to be redundant or immaterial.[5]
 {¶ 22} In the case at bar, the jury instructions were proper. The court instructed the jury to consider all of the exhibits, and the documents in question were submitted to the jury. It was clear from the evidence and the arguments of counsel that the issue before the jury was which of the documents embodied the agreement of the parties. The trial court did not place special emphasis on any of the documents, and the court's refusal to give New Concept's proposed instruction was not erroneous.
 Consideration for the Promissory Note {¶ 23} New Concept next argues that even if the promissory note was the controlling document, it was not supported by consideration. Although New Concept apparently concedes that it received some value for the note, it argues that it *Page 8 
did not receive the consideration for which it had bargained. Specifically, New Concept emphasizes that it was to receive the property by means of a conveyance from OEP instead of purchasing it directly at the sheriffs sale.
 {¶ 24} New Concept is correct in its general assertion that a contract must be supported by bargained-for consideration.[6] But in this case, the consideration was the transfer of UDS's share of the property to New Concept. Although New Concept points to certain testimony of Bergman describing the anticipated method of conveyance, the change in that method did not render the consideration invalid or inadequate. The fact remained that New Concept received UDS's share.
 {¶ 25} And as UDS aptly notes, New Concept had abided by a number of the terms of the promissory note. It had paid the principal amount of the note and had provided UDS with annual financial statements, presumably to account for other items owed under the note. These actions were simply not consistent with the assertion that there had been a lack of — or a failure of — consideration.
 Statute of Limitations {¶ 26} New Concept next argues that the trial court erred in failing to declare that UDS's claims under the note were barred by the statute of limitations. The applicable statute, R.C. 1303.16(A), states that "an action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note * * *."
 {¶ 27} We first note that the refinancing did not occur until 2004, which meant that the claim for a percentage of the proceeds from that transaction was filed well within the six-year limitations period. As for the annual payments based on revenue, the promissory note itself stated that the obligations at issue were to "remain and continue as obligations of the Maker until such time as the property is *Page 9 
sold on an arms-length basis, notwithstanding the due dates of the interest and principal described herein." Under R.C. 1303.07(B), such an extension of the due date was proper, and the suit to collect on the note was brought within the limitations period.
 Laches and Equitable Estoppel {¶ 28} We also find no merit in New Concept's assertion that collection on the note was barred by the doctrines of laches and equitable estoppel. New Concept argues that UDS had waited an unreasonable amount of time to assert its rights under the promissory note, thereby leading New Concept to believe that it was no longer obligated by the terms of the note. New Concept further claims that it was prejudiced by the continuing accrual of interest on the obligations and suggests that it would have disposed of the property earlier had it known that UDS would assert its rights to payment.
 {¶ 29} To prove the defense of laches, the party claiming the defense must prove "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party."[7]
 {¶ 30} In this case, there was no unreasonable delay in UDS's assertion of its rights under the note. The note itself put New Concept on notice that its obligations continued until the sale of the property, and New Concept acknowledged its obligations by continuing to send UDS annual financial reports. In light of the ongoing nature of the relationship between the parties, laches did not apply.
 {¶ 31} Similarly, the doctrine of equitable estoppel did not apply. Equitable estoppel requires proof that a party detrimentally relied on a factual *Page 10 
misrepresentation, [8] and there is simply no evidence of such a misrepresentation in the case at bar. Accordingly, we overrule the first assignment of error.
 Attorney Fees and Expenses {¶ 32} In the second assignment of error, New Concept contends that the trial court erred in awarding attorney fees and related expenses to UDS.
 {¶ 33} R.C. 1301.21(B) specifically permits recovery of attorney fees in commercial breach-of-contract cases. The statute provides that "[i]f a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment * * *." R.C. 1301.21(C) and (D) further provide that fees are recoverable if the underlying obligation exceeds $100,000 and if the fees are reasonable.
 {¶ 34} The promissory note in this case included a specific attorney-fee provision. The note stated that "[i]n case it should become necessary to employ counsel to collect this Note, or any part hereof, or interest herein, or to protect the rights of the Holder, the Maker binds itself to pay the reasonable fees of the attorney at law who may be employed for that purpose, together with reasonable court costs."
 {¶ 35} But New Concept contends that the award of attorney fees in this case was improper because R.C. 1301.21 could not be applied retroactively. This argument is without merit. Although the note in this case was executed in 1987, the attorney-fee provision was not enforced until well after the effective date of R.C. 1301.21, which was May 11, 2000.[9] *Page 11 
 {¶ 36} Moreover, statutes providing for attorney fees are remedial in nature and may be applied retroactively without violating the obligor's constitutional rights.[10] In accordance with this principle, R.C. 1301.21 has been held applicable to contracts executed before the statute's effective date.[11] Accordingly, we reject the contention that the attorney-fee award was unconstitutional or contrary to public policy.
 {¶ 37} We turn now to the amount of the award itself. New Concept first argues that the award was improper because it included compensation for other litigation expenses, which it contends did not constitute "reasonable fees of the attorney at law" within the meaning of the promissory note.
 {¶ 38} The Supreme Court of Ohio has held that miscellaneous expenses of litigation may be considered in determining the proper amount of attorney fees.[12] The expert witness for UDS in this case testified, without objection, that the expenses in question were properly compensable as attorney fees, and New Concept did not produce any evidence to rebut that opinion. Thus, we find no error in the trial court's inclusion of those expenses.
 {¶ 39} New Concept also argues that the court erred in awarding fees for UDS's defense of the claim for tortious interference with a contractual relationship. It argues that, because UDS was not successful in asserting its right to the insurance proceeds, it was not entitled to the fees for defending the tortious-interference claim.
 {¶ 40} This argument is without merit. There was evidence that UDS's assertion of an interest in the insurance proceeds was reasonably calculated "to protect the rights of the Holder" under the language of the note, and UDS ultimately *Page 12 
prevailed on New Concept's tortious-interference claim. Thus, there was no error in the award for defending the claim.
 {¶ 41} Finally, New Concept contends that UDS's failure to submit records specifically allocating time spent on the various claims rendered the award improper. We reject this argument as well. Many of the issues and causes of action were interwoven, and the records submitted to the trial court supported the court's finding that the fees were necessary to protect UDS's rights.
 {¶ 42} The trial court's award of attorney fees was proper, and we accordingly overrule the second assignment of error.
 Prejudgment Interest {¶ 43} In its third assignment of error, New Concept argues that the court erred in awarding prejudgment interest. New Concept concedes that the promissory note provided for prejudgment interest, but it argues that the jury's verdict had already included such interest, thus rendering the trial court's separate award of $45,777.58 a double recovery.
 {¶ 44} This argument is not persuasive, because the jury returned a general verdict in favor of UDS. In the absence of special interrogatories, we cannot determine whether the jury had included prejudgment interest in its calculation of damages.[13] Accordingly, the record does not reflect a double award of damages, and we overrule the third assignment of error.
Summary Judgment on the Legal-Malpractice Claim {f 45} In its fourth and final assignment of error, New Concept argues that the trial court erred in granting summary judgment in favor of Thomas Bergman and Cohen Todd on the legal-malpractice claim. *Page 13 
 {¶ 46} The essence of the malpractice claim was that Thomas Bergman had improperly drafted the promissory note by altering the terms of the Singh deal, and that he had done so to benefit his family at the expense of New Concept. The trial court granted the motion for summary judgment on the basis that the malpractice action had been filed after the expiration of the statute of limitations.
 {¶ 47} We again note that, in the first appeal of this issue, this court did not disturb the trial court's grant of summary judgment.[14]
We held only that we lacked jurisdiction to entertain the appeal because of the pendency of the declaratory-judgment claim.[15]
 {¶ 48} We now address the issue on its merits. Under Civ. R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[16] This court reviews the granting of summary judgment de novo.[17]
 {¶ 49} Under R.C. 2305.11(A), a legal-malpractice action must be brought within one year of the accrual of the action. An action for legal malpractice accrues either (1) when there is a cognizable event by which the plaintiff discovers or should discover the injury underlying the claim and is put on notice of the need to pursue potential remedies against the attorney; or (2) when the attorney-client relationship for the transaction in question ends, whichever occurs later.[18] *Page 14 
 {¶ 50} In this case, summary judgment was proper. It was undisputed that Thomas Bergman's only role as an attorney in this matter was his drafting of the promissory note and guaranty in 1987. Accordingly, any attorney-client relationship terminated at that time.
 {¶ 51} And New Concept failed to demonstrate any "cognizable event" that had put it on notice of the alleged injury after the execution of the note. The inconsistencies between the note's terms and the terms of the Singh deal were evident from the face of the note itself, which New Concept signed in 1987. And as we have already discussed, New Concept's asserted belief that the terms of the note would not be enforced was unreasonable.
 {¶ 52} Finally, New Concept argues that the trial court improperly allocated the burden of proof in granting the motion for summary judgment. This argument is without merit. UDS had presented evidence that the limitations period had run, and New Concept was unable to demonstrate otherwise. Our de novo review of the issue reflects that the trial court's determination was correct. Accordingly, we overrule the assignment of error and affirm the summary judgment entered in favor of Thomas Bergman and Cohen Todd.
 Conclusion {¶ 53} Having overruled each of the assignments of error, we affirm the judgments of the trial court.
Judgments affirmed. PAINTER and DINKEIACKER, JJ., concur.
[1] New Concept Housing, Inc. v. Bergman (Mar. 7, 2007), 1st Dist. No. C-060174.
[2] Id.
[3] See Blair v. McDonagh, 177 Ohio App.3d 262, 2008-Ohio-3698,894 N.E.2d 377, jurisdictional motion overruled, 120 Ohio St.3d 1456,2008-Ohio-6813, 898 N.E.2d 969.
[4] Wright v. Wal-Mart (Mar. 19, 1999), 1st Dist. No. C-980511, citingMurphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591,575 N.E.2d 828.
[5] Wright, supra.
[6] See, e.g,, Carlisle v. T R Excavating, Inc. (1997),123 Ohio App.3d 277, 283, 704 N.E.2d 39.
[7] State ex rel. Meyers v. Columbus (1995), 71 Ohio St.3d 603, 605,646 N.E.2d 173, quoting State ex rel. Cater v. N. Olmsted,69 Ohio St.3d 315, 325, 1994-Ohio-488, 631 N.E.2d 1048.
[8] Hills Real Estate Group v. Williams (Sept. 29, 2000), 1st Dist. No. C-990818.
[9] See Patrick v. Ressler, 10th Dist. No. 04AP-149, 2005-Ohio-4971, ¶ 48 (determination of whether R.C. 1302.21 applied to promissory note was based on date of enforcement of note, not on date of execution).
[10] State ex rel. Beacon Journal Publishing Co. v. Ohio Dept. ofHealth (1990), 51 Ohio St.3d 1, 3, 553 N.E.2d 1345.
[11] Patrick, supra, at ¶ 51.
[12] Villella v. Waikem Motors (1989), 45 Ohio St.3d 36, 41,543 N.E.2d 464. See, also, State ex rel. Montrie Nursing Home, Inc. v.Creasy (1983), 5 Ohio St.3d 124, 128, 449 N.E. 2d 763.
[13] See, e.g., Jordan v. Westfield Ins. Co., 7th Dist. No. 07 MA 18,2008-Ohio-1542, ¶ 36, and Grm v. T-Mac, Inc. (Aug. 29, 1984), 9th Dist. No. 3621.
[14] New Concept, supra.
[15] Id.
[16] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587, 589,1994-Ohio-130, 639 N.E.2d 1189.
[17] Jorg v. Cincinnati Black United Front, 153 Ohio App.3d 258,2003-Ohio-3668, 792 N.E.2d 781, ¶ 6.
[18] Roberts v. Maichl, 1st Dist. No. C-040002, 2004-Ohio-4665, ¶ 20. *Page 1