OPINION
{¶ 1} Tanya J. Cobbins appeals from an order of the Montgomery County Court of Common Pleas, which granted summary judgment to Stephanie Woods on three of Cobbins' counterclaims relating to two identical oral contracts to purchase two properties.
 {¶ 2} The parties agree to few, if any, of the underlying facts.
 {¶ 3} According to Woods, she and Cobbins first met in July 2001. On July 29, 2001, Cobbins signed a written lease to rent the premises at 829 Almond Avenue from August 1, 2001, through July 31, 2002, for $700 per month. The lease, which was attached to the Woods' complaint, stated that the lease would automatically renew for a one year period at a rate of $725 per month unless prior written notice had been given by either party. On May 7, 2003, Woods filed an action against Cobbins in the Dayton Municipal Court for forcible entry and detainer, seeking restitution of the property and unpaid rent in the amount of $7,250. Woods alleged that Cobbins remained in possession of the property but had failed to pay rent since August 1, 2002.
 {¶ 4} Cobbins states that she and Woods first met in May 2001. In her affidavit, Cobbins stated that, in May and July of 2001, Woods represented to her that she would be purchasing (as opposed to renting) 829 Almond Avenue on an installment land contract on the following terms: (1) $5,000 down payment, (2) $700 per month payments, and (3) total purchase price of $24,000. Cobbins indicated that she had paid the required deposit and had made the monthly payments from July 2001 through April 2003. She also averred that she had entered into a similar agreement with Woods with respect to property located at 502 Kammer Avenue.
 {¶ 5} Consequently, Cobbins responded to Woods' eviction action with several counterclaims. Specifically, in her first counterclaim, Cobbins claimed that she had ceased making payments to Woods because she had satisfied the terms of their unwritten contracts. She alleged that Woods had breached the Almond Avenue contract by failing to deliver a general warranty deed to her. In her second counterclaim, Cobbins alleged that Woods had made fraudulent representations to her that their agreement would be a land sales contract, and that Woods had never intended to honor the orally agreed-upon terms. In her third counterclaim, Cobbins alleged that she and Woods had entered into a second identical land sales contract whereby Cobbins would purchase property located at 502 Kammer Avenue. As in Counterclaim Two, Cobbins claimed that Woods had made fraudulent representations about the Kammer Avenue contract. Finally, as an alternative claim, Cobbins alleged in her fourth counterclaim that, assuming that she and Woods had merely entered into a lease agreement, Woods had failed to comply with various building codes and to maintain safe premises.
 {¶ 6} Because Cobbins sought damages in an amount above the jurisdictional limit of the municipal court, the case was transferred to the Montgomery County Court of Common Pleas.
 {¶ 7} On October 10, 2002, Woods filed a motion to dismiss or, alternatively, for summary judgment on the three counterclaims which related to the alleged installment land contracts. With regard to the Almond Avenue property, Woods argued (1) that the alleged installment land contract violated the Statute of Frauds because the terms were unwritten, and (2) that the parol evidence rule barred Cobbins' fraud in the inducement claim because the claim directly contradicted the lease agreement signed by the parties. Woods argued that the Kammer Avenue claim should also be dismissed, based on the Statute of Frauds and the parol evidence rule. She further asserted that she did not own the Kammer Avenue property, which had been transferred to her exhusband in 2000 and subsequently sold at a sheriff's sale due to foreclosure.
 {¶ 8} The trial court granted Woods' motion, treating it as a motion for summary judgment. Shortly thereafter, the court granted Woods' request for a writ of restitution of the Almond Avenue premises. The court deferred ruling on Woods' claim for damages, which presumably also encompassed Cobbins' fourth counterclaim relating to Woods' duties as a landlord.
 {¶ 9} Cobbins asserts four assignments of error on appeal.
"The lower court erred in finding that the alleged oral agreement to purchase the almond avenue property is invalid because it violates the statute of frauds."
 {¶ 10} Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Stateex rel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181,183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 8 O.O.3d 73,375 N.E.2d 46.
 {¶ 11} In her first assignment of error, Cobbins claims that the trial court erred in finding that the alleged oral agreement to purchase the Almond Avenue property is invalid and unenforceable, because it violates the Statute of Frauds. She further claims that the Statute of Frauds does not preclude her claim of fraudulent inducement.
 {¶ 12} R.C. 1335.04 provides that an assignment or grant of an interest in land must be by deed or by a written document, signed by the party (or the party's agent) who is assigning or granting the interest. R.C. 1335.05 further provides that "[n]o action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 13} Cobbins claims that Woods' documentation of her payment history for the Almond Avenue property, which she attaches to her brief as Exhibit H, satisfies the writing requirement of R.C. 1335.04 and R.C. 1335.05. Exhibit H indicates that Cobbins made payments on a five year land contract with a purchase price of $75,000 and a down payment of $5,000. The three page document shows monthly payments of $700 from July 1, 1997, until October 1, 2002. As noted by Woods, pages one and two of the document list Cobbins as "tenant" at the Kammer Avenue address; only page three shows 829 Almond Avenue as her address. Moreover, Exhibit H mirrors Cobbins' Exhibit B, which was submitted to the trial court in opposition to Wood's motion, with the exception that page three of Exhibit B also listed Cobbins' address as 502 Kammer Avenue. Regardless, Exhibit H was not presented to the trial court and, thus, it is not part of the record before us. "It is axiomatic that an appellate court will not consider matters outside of the appellate record." Alex-BellOxford Limited Partnership v. Woods (June 5, 1998), Montgomery App. No. 16038, citing State v. Ishmail (1978),54 Ohio St.2d 402, 377 N.E.2d 500, paragraph one of syllabus. Accordingly, Exhibit H will not be considered, and we need not address Woods' allegation that that document is an "obvious forgery."
 {¶ 14} Upon reviewing the evidence properly before us, there is no written evidence of a land sales contract for the Almond Avenue property. The only document which suggests that Cobbins has any ownership interest in that property is the homeowners/fire insurance binder. That document names Cobbins as the insured for 829 Almond Avenue and Woods as her agent. The fact that the binder was for homeowners' insurance — not renter's insurance — is the only indication that Cobbins may have had an ownership interest in the Almond Avenue property. However, the insurance binder is not signed by Woods, the party to be charged under R.C. 1335.05, and thus cannot satisfy the Statute of Frauds. Moreover, the binder contains neither the terms of the alleged sales contract nor any other indication that Woods intended to transfer the property to Cobbins. Because there is no written memorandum indicating a land sales contract for the Almond Avenue property, the Statute of Frauds makes the alleged oral agreement unenforceable. Accordingly, the trial court properly granted summary judgment to Woods on Cobbins' first counterclaim, which sought to enforce the alleged Almond Avenue installment land contract.
 {¶ 15} Cobbins further claims that the trial court improperly applied the Statute of Frauds to preclude her claim that she was fraudulently induced to enter into the contract by Woods' promise to sell her the Almond Avenue property. She states that, while the Statute of Frauds may prevent her from proving the existence of the installment land contract, the statute does not prevent her from establishing "the fact that a land contract was mentioned" and that she had relied upon "the preparation of documents and statements made" by Woods.
 {¶ 16} In holding that Cobbins' fraudulent inducement claim was precluded by the Statute of Frauds, the trial court relied upon Marion Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265,533 N.E.2d 325, paragraphs three and four of the syllabus. InCochran, the supreme court held that "[t]he Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing." Id. at paragraph three of the syllabus. The supreme court has since recognized that the holdings in Cochran are more properly related to the parol evidence rule than the Statute of Frauds. Galmish v. Cicchini, 90 Ohio St.3d 23, 29 at n. 2,2000-Ohio-7, 734 N.E.2d 782. Thus, the trial court's analysis of Cobbins' fraudulent inducement claim would have been more properly framed in terms of the parol evidence rule. However, in light of the fact that the trial court additionally held that the parol evidence rule precluded Cobbins' fraudulent inducement claim, any error in this regard is harmless.
 {¶ 17} The first assignment of error is overruled.
 {¶ 18} "The lower court erred in finding that parol
evidence would not be admissible regarding the oral agreement to purchase the almond avenue property and that the oral agreement is not enforceable because the proposed parol evidence pertains to the same subject matter, but contains differing terms from the written agreement."
 {¶ 19} In her second assignment of error, Cobbins claims that the trial court erred in finding that parol evidence regarding the oral installment land contract was inadmissible and that the oral agreement was not enforceable. She asserts that the court addressed her claims as if she had only requested enforcement of the terms of the oral contract. Cobbins emphasizes that her second counterclaim also requested relief in the form of damages or a declaratory judgment regarding ownership.
 {¶ 20} "The parol evidence rule is a rule of substantive law that prohibits parties to a contract from later contradicting the express terms of the contract with evidence of other alleged or actual agreements." Evilsizor v. Becraft Sons Gen.Contractors, Ltd., Clark App. No. 03-CA-0069, 2004-Ohio-1306
(citations omitted). The parol evidence rule does not preclude a party from presenting extrinsic evidence that she was fraudulently induced to enter into a written agreement.Galmish, 90 Ohio St.3d at 28. However, the party may not circumvent the rule by claiming that the fraudulent inducement was a prior or contemporaneous oral agreement the terms of which contradict the written agreement. Id. at 29; Cochran, supra (holding that the guarantors on mortgage document could not prevail on their fraudulent inducement claim based on an alleged oral promise to release them as guarantors after their son had paid the proceeds from the sale of corn when the written agreement set different terms for their release). "Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." Galmish,90 Ohio St.3d at 30 (citation omitted).
 {¶ 21} In the present case, it is undisputed that Cobbins signed a lease for the rental of the Almond Avenue property on July 29, 2001. The lease stated that the term was from August 1, 2001, until July 31, 2002, subject to automatic renewal absent timely written notice by either party. Cobbins was required to pay a security deposit in the amount of $1,400 and to make monthly rental payments of $700. Woods retained the right to terminate the lease with thirty days notice if the premises were sold. The lease also included an integration clause, which stated: "This Lease Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the agreement."
 {¶ 22} Cobbins supports her fraudulent inducement claim by stating that, in May and July of 2001, Woods repeatedly represented to her that she would be purchasing the Almond Avenue property on a land sales contract. Cobbins further asserts that Woods prepared documents and that she (Cobbins) had signed them in July 2001, because she "believed that these documents would assist me in the purchase of the real property." Thus, Cobbins has asserted that Woods had entered into an oral agreement either prior to or contemporaneous with the written lease.
 {¶ 23} By signing the lease after the alleged oral agreement, Cobbins agreed to a leasehold interest in the property and, further, that there were no other agreements between the parties. The terms of the alleged oral land sales contract concerned the same subject matter as the written lease (i.e., the relationship between Cobbins and Woods as to the Almond Avenue property), yet contained vastly different terms. Under such circumstances, the parol evidence rule precludes Cobbins from offering extrinsic or parol evidence of the varying terms. In other words, Cobbins cannot circumvent the terms of the written lease by claiming that she was fraudulently induced into signing the lease by a prior or contemporaneous oral agreement, whereby Cobbins would purchase the property, when the terms of that oral agreement contradicted the lease. Accordingly, the trial court properly granted summary judgment to Woods on Cobbins' claim of fraudulent inducement regarding the Almond Avenue property. Moreover, because Cobbins does not have a viable fraudulent inducement claim, the fact that she has sought various forms of relief for the alleged fraudulent inducement is of no consequence.
 {¶ 24} The second assignment of error is overruled.
 {¶ 25} "The lower court erred in finding that any alleged oral agreement for the purchase of the 502 kammer property also violates the statute of frauds and is therefore invalid."
 {¶ 26} In her third assignment of error, Cobbins contends that the trial court improperly found that the installment land contract regarding the Kammer Avenue property violated the Statute of Frauds. She emphasizes that there was no written lease between the parties with respect to 502 Kammer and, thus, the parole evidence rule cannot preclude her claim. Cobbins asserts that the fact that the premise was leased to a third party does not eliminate her claim. She also contends that the trial court erred in relying upon unrelated litigation concerning ownership of the property. Woods responds that, for the reasons set forth regarding the Almond Avenue property, Cobbins' third counterclaim is not viable.
 {¶ 27} The evidence concerning 502 Kammer Avenue is significantly different from that presented to the trial court as to the Almond Avenue property. Most notably, Cobbins presented a payment history document regarding 502 Kammer Avenue, which sets forth terms of the sale of the property to Cobbins. As stated, supra, this document (Exhibit B) indicates that from July 1, 1997, until October 1, 2002, Cobbins paid $700 per month on a five year land contract with a purchase price of $75,000 and a down payment of $5,000. The interest rate on the note was 11%. Significantly, the document appears to be signed by Woods, the party to be charged. On its face, Exhibit B satisfies the requirements of the Statute of Frauds.
 {¶ 28} Woods has argued that Cobbins' factual allegations and her supporting evidence are inconsistent and incredible. With regard to Counterclaim Three, Woods notes that, according to Cobbins' allegations, the oral agreement began in 1997, Cobbins has paid a total of $49,000, and she has suffered an injury of $54,000. (Cobbins indicated to the trial court that the Almond Avenue agreement was made in 2001 and that 1997 was a typographical error. It is unclear whether she intended to state that the Kammer Avenue agreement also was made in 2001.) Woods further notes that, despite these payments and the alleged concurrent payments on the Almond Avenue property, Cobbins has produced evidence that she needed government assistance for $1,400 of the down payment. Woods has also questioned how the $5,000 down payment plus $700 for 24 months equals the $24,000 purchase price, as set forth in Cobbins' counterclaims and affidavit. The $24,000 purchase price does not match the $75,000 purchase price listed on Exhibits B and C, nor is it consistent with the allegation that she had paid $54,000 toward the purchase of the property. We add that both Cobbins and Woods have indicated that they met in 2001, thus raising questions as to why the payment history document dates to 1997.
 {¶ 29} Cobbins has averred that all of her documentary evidence are "originals as received" and that she "ha[d] not made any alterations to them." Although various aspects of Exhibit B may suggest that the document is not authentic, she has presented some additional evidence that is, at least in some respects, consistent with Exhibit B. For example, Cobbins has presented a receipt, apparently signed by Woods, for her payment of $2,500 toward a $5,000 balance. The receipt appears to say that the $2,500 payment was for "down," which might mean for a down payment. At the very least, the $5,000 balance corresponds with the deposit mentioned on Exhibit B (although we are curious as to why a down payment would have been made on August 8, 2002, when the contract was allegedly made in July 2001). We agree with the trial court that, viewed as a whole, Cobbins' evidence is contradictory and offers little guidance as to agreements between the parties. However, when construing the payment history document in the light most favorable to Cobbins, there are genuine issues of material fact as to whether an installment land contract was created with the terms stated therein and, thus, whether there is a written and signed memorandum of an installment land contract for purposes of the Statute of Frauds. See Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 88,585 N.E.2d 384 (holding that, pursuant to Civ.R. 56(C), where the plaintiff's affidavit seemingly conflicted with his prior deposition testimony, the trial court was required to resolve the discrepancies in the plaintiff's favor and to consider the favorable affidavit). Accordingly, the trial court erred in concluding that the Statute of Frauds precluded Cobbins' claim regarding 502 Kammer Avenue, as a matter of law.
 {¶ 30} Cobbins further argues that the parol evidence rule does not preclude her claim, because there was no written lease governing their relationship with respect to the Kammer Avenue property. We agree. According to Woods' evidence, La'Shawn Dixon entered into a written lease to rent 502 Kammer Avenue, effective January 5, 2001. It is undisputed that there was no written integrated lease — or any other written integrated agreement — between Woods and Cobbins for that property. Accordingly, the parol evidence rule does not preclude extrinsic or parol evidence regarding the alleged installment land contract.
 {¶ 31} Cobbins further claims that the court improperly concluded that she could not receive a declaratory judgment that she owned the Kammer Avenue property, on the ground that the issue had been resolved in a prior unrelated litigation. Although the trial court need not have relied upon unrelated litigation, we find no fault with the trial court's conclusion that Cobbins cannot be declared the rightful owner of 502 Kammer Avenue if she were to prevail on her third counterclaim. Woods has presented unrefuted evidence that she has had no ownership interest in the property since 2000. Accordingly, although Cobbins may request damages based on Woods' alleged fraudulent attempt to sell her property that she did not own, Woods has no interest to convey to Cobbins. Accordingly, Cobbins may not be made the owner of the Kammer Avenue property, either by way of a declaratory judgment or specific performance of the alleged land sales contract.
 {¶ 32} The third assignment of error is sustained in part and overruled in part.
 {¶ 33} "The lower court erred in dismissing the first, second, and third counterclaims of appellant."
 {¶ 34} In her fourth assignment of error, Cobbins claims that the trial court erroneously focused on whether the alleged oral contracts could be enforced and failed to address whether she could present a claim for fraud and receive monetary damages. Because we have concluded that Cobbins' first and second counterclaims are precluded by the Statute of Frauds and the parol evidence rule, this assignment of error is moot with regard to those claims.
 {¶ 35} As to her third counterclaim regarding the Kammer Avenue property, the trial court concluded that she could not prevail on her fraudulent inducement claim and, thus, no remedy was available. We agree with Cobbins that she may pursue a claim for damages regarding the Kammer Avenue property. In her affidavit, Woods has emphasized that she purchased the Kammer Avenue property in 1997 but transferred ownership of that property to her former husband, Gilbert Woods, in 2000. Woods indicated that she and Cobbins met in 2001. Woods also has stated that she continued to manage the property for her former husband as a rental property until the property was foreclosed upon and sold at a sheriff's sale in September 2003. Considering this evidence in conjunction with Exhibit B and viewing that evidence in the light most favorable to Cobbins, a reasonable factfinder could conclude that Cobbins was induced to enter into a land sales contract and to make $700 payments on that agreement by Woods' promise to convey property that Woods knew that she did not own, i.e., 502 Kammer Avenue. Accordingly, Cobbins has presented sufficient evidence to withstand Woods' motion for summary judgment on her fraudulent inducement claim regarding the Kammer Avenue property. If such a claim is ultimately successful, Cobbins may seek monetary damages for that claim.
 {¶ 36} The fourth assignment of error is sustained in part and overruled, as moot, in part.
 {¶ 37} In summary, the trial court properly granted summary judgment to Woods on Cobbins' claims regarding the Almond Avenue property. Cobbins' fraudulent inducement claim regarding the Kammer Avenue property is not precluded by the Statute of Frauds or the parol evidence rule. However, the trial court properly concluded that Cobbins may not enforce the oral agreement by either specific performance or a declaratory judgment. Cobbins' remedy for the alleged fraudulent inducement regarding the Kammer Avenue property is limited to monetary damages.
 {¶ 38} The judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings.
Brogan, J. and Grady, J., concur.