OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Lewis Patrick (individually "Patrick") and Re-Ex of Ohio, Inc. ("Re-Ex"), from a judgment of the Franklin County Court of Common Pleas, overruling objections to, and adopting, a magistrate's decision granting summary judgment in favor of defendants-appellees, John Ressler (individually "Ressler") and Judy Morgan (individually "Morgan"), and against appellants, in an action on a promissory note.
 {¶ 2} On May 18, 1999, appellants filed a complaint, naming as defendants Ressler and Morgan, as well as Realty Executive Decisions, Re-Ex OH KY, LLC, Lincoln Trust Company ("Lincoln Trust"), and various unknown John and Jane Does. Appellants' nine-count complaint sought a declaratory judgment, or alternative relief, in a case arising out of a business venture between Patrick and his company, Re-Ex, on the one hand, and Ressler and his company, Diamond Industries, Inc. ("Diamond"), on the other. A number of the claims in appellants' complaint were subsequently resolved by an agreed judgment entry filed by the trial court on January 12, 2004, leaving, for purposes of the instant appeal, issues relating to Ressler's counterclaim.
 {¶ 3} Appellants' complaint alleged in part that Ressler sought to use monies from his own individual retirement account ("IRA") to purchase an interest in a business controlled by Patrick. It was further alleged that Ressler, in order to avoid adverse tax consequences to himself, asked Patrick to borrow the money from Ressler's IRA and, in return, loan it to Ressler's corporation, Diamond, the proceeds of which would then be used to purchase an interest in Patrick's business. As part of the alleged agreement, Patrick/Re-Ex executed a note (in the amount of $125,000) and mortgage in favor of Lincoln Trust; in turn, Diamond issued a promissory note to Re-Ex. Appellants alleged that Ressler, through Diamond, subsequently ceased making monthly payments to Patrick on the promissory note to Re-Ex.
 {¶ 4} On July 22, 1999, Diamond filed an answer and counterclaim; Ressler filed an answer and counterclaim on September 9, 1999. On September 29, 1999, appellants filed a motion to dismiss Ressler's counterclaim, which the court subsequently denied.
 {¶ 5} On August 22, 2000, Morgan, "as servicing agent for Lincoln Trust Company custodian FBO John Ressler," filed a counterclaim against appellants for damages and foreclosure on a note and mortgage. Morgan's counterclaim alleged that Patrick and Re-Ex were in default on a promissory note, executed on November 25, 1997, in favor of Lincoln Trust. The counterclaim sought damages in the amount of $123,889.65, with interest of 8.5 percent accruing from February 1, 1999, as well as late fees, penalties, attorney fees and costs. On February 19, 2002, Morgan filed an amended counterclaim.
 {¶ 6} On March 8, 2002, appellants filed a motion to dismiss the counterclaim of Morgan. Also on that date, appellants filed a counterclaim in response to the counterclaims of Ressler and Diamond, alleging in part an alter ego relationship between Ressler and Diamond. On March 28, 2002, Morgan filed a motion for summary judgment against appellants. The parties subsequently entered into a stipulation, agreeing to substitute Ressler as the party asserting the claims in Morgan's amended counterclaim as well as the motion for summary judgment.
 {¶ 7} On August 6, 2002, the magistrate issued a decision, finding that Ressler "is entitled to judgment against Mr. Patrick for amounts due on the Note, plus interest according to the terms of the Note, and to an Order of foreclosure pursuant to the terms of the Mortgage." On August 19, 2002, appellants filed a "motion to reconsider" the magistrate's decision rendered on August 6, 2002. On September 9, 2002, the magistrate denied appellants' motion to reconsider.
 {¶ 8} On September 10, 2002, appellants filed with the trial court objections to the magistrate's August 6, 2002 decision, while, on September 20, 2002, appellants filed objections to the magistrate's September 9, 2002 decision. By decision filed January 6, 2003, the trial court overruled appellants' objections to both magistrate's decisions.
 {¶ 9} On January 12, 2004, the parties filed an agreed judgment entry, incorporating a settlement agreement whereby judgment was rendered "on all applicable counts" in favor of appellants and against Diamond in the amount of $1,600,000 for compensatory damages. The entry further provided that "the causes of action asserted between the Plaintiffs and the Defendants in this matter, not otherwise adjudicated in or necessary to determination of claims related to this or other entries are dismissed with prejudice."
 {¶ 10} Also on January 12, 2004, the trial court filed a judgment entry adopting the magistrate's decisions of August 6, 2002, and December 30, 2003, rendering judgment in favor of Ressler and Morgan and against appellants jointly and severally, in accordance with the court's entry adopting the magistrate's August 6, 2002 decision granting appellees' motion for summary judgment. Specifically, the court entered judgment against appellants "in the amount of $121,412.14 in unpaid principal, $30,767.02 in unpaid interest, $2,162.57 of accrued penalties, $28,505.65 of escrowed principal and interest payments, and $16,879.46 in attorney fees for a total of $199,726.84." The court further granted appellees an order of foreclosure pursuant to the terms of the mortgage.
 {¶ 11} On appeal, appellants set forth the following three assignments of error for review:
I. The Trial Court erred when it granted summary judgment against appellants and in favor of appellees as set forth in the trial court's decision [sic] entry of January 6, 2003, which incorporated the magistrate's decision filed August 6, 2002 as if fully rewritten therein; and thereafter entering final judgment pursuant to said summary judgment decision on January 12, 2004.
II. The trial court erred as a matter of law by entering judgment for attorney fees in favor of appellees in the amount of sixteen thousand eight hundred seventy-nine dollars and forty-six cents ($16,879.46).
III. The trial court erred as a matter of law by entering judgment finding appellants owing one hundred twenty-one thousand four hundred twelve dollars and fourteen cents ($121,412.14) in unpaid principal, thirty thousand seven hundred sixty-seven dollars and two cents ($30,767.02) in unpaid interest, two thousand one hundred sixty-two dollars, and fifty-seven cents ($2,162.57) in accrued penalties, twenty-eight thousand five hundred five dollars and sixty-five cents ($28,505.65) in escrowed principal and interest payments.
 {¶ 12} Under the first assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of appellees and finding liability against appellants on the note and foreclosure claims.
 {¶ 13} Appellate review of a trial court's granting of summary judgment is de novo. Burden v. Hall, Franklin App. No. 04AP-52,2005-Ohio-2799, at ¶ 23. Pursuant to Civ. R. 56, in order to obtain summary judgment, a movant must demonstrate: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, such party being entitled to have the evidence construed most strongly in his or her favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370.
 {¶ 14} At issue on appeal is the question of liability on a promissory note, executed by Patrick, both individually and on behalf of Re-Ex, on November 25, 1997, whereby the borrowers promised to repay a loan in the amount of $125,000 to "Lincoln Trust Company, custodian FBO John Ressler." The terms of that note (hereafter "the Lincoln Trust note") provided for the borrowers to make monthly payments of $961.14, beginning on January 1, 1998, with a maturity date of December 31, 2004, at a yearly interest rate of 8.5%. Also on that date, Re-Ex executed a second mortgage deed, granting to Lincoln Trust a security interest in real estate located at 2885 W. Dublin Granville Road, Columbus, to secure payment of the promissory note.
 {¶ 15} A dispute arose over the payments on the note; according to averments made by Morgan in her affidavit, Patrick and Re-Ex ceased making payments on the Lincoln Trust note in February of 1999. On June 9, 1999, pursuant to a court order, appellants began making payments to the Franklin County Clerk of Courts, such payments to be held in an interest bearing escrow account. Morgan further averred that appellants ceased making payments to the court after July of 2001.
 {¶ 16} Patrick filed an affidavit in which he averred that he and Ressler discussed forming a limited liability corporation (RE-EX OH KY, LLC) in the summer of 1997. According to Patrick, Ressler came up with an "elaborate scheme" to finance part of the funds he needed to purchase his interest in the business. Specifically, Ressler informed Patrick that he wanted to use monies from his self-directed IRA to finance part of the purchase. However, because of Ressler's concern that he would incur income taxes and penalties for early withdrawal of the IRA, he asked Patrick to "borrow" the money from Ressler's IRA; in turn, this money would be loaned to Ressler to purchase the one-half interest in the business.
 {¶ 17} According to Patrick, not all of the agreements in this scheme were in writing, but, rather, involved oral agreements. In November of 1997, Re-Ex borrowed money from Ressler's IRA, through execution of a mortgage and note. In exchange, Ressler caused a note to be issued on behalf of Diamond (hereafter "the Diamond note"), whereby Diamond agreed to pay Re-Ex the identical amount in the mortgage. Patrick averred that neither he nor Re-Ex stopped making payments on the Lincoln Trust note and mortgage prior to the time Ressler and Diamond ceased making payments on the Diamond note.
 {¶ 18} On appeal, appellants maintain that the parties entered into an oral "self-financing" agreement, and that the trial court erred in failing to consider the Lincoln Trust note and the "funding note" (i.e., Diamond note) as related in order to enforce the intent of the parties. Appellants contend that, contrary to the magistrate's determination, the parol evidence rule does not apply to preclude testimony regarding this oral agreement.
 {¶ 19} The magistrate, in his August 6, 2002 decision, rejected appellants' attempt to link the Lincoln Trust note and the Diamond note, finding in part:
* * * First, the argument is contradicted by the notes themselves, including the terms of the notes and the identity of the parties to the notes. Second, even if Plaintiffs' theory regarding the purpose of the transaction is correct, there is no showing that the transaction was somehow improper or that Plaintiffs were somehow deceived as to the nature of the transaction.
Based on their terms, the notes are independent; payment on the Note is not conditioned on payment of the Diamond Note. Moreover, the parties to the notes are different. The Note is from Mr. Patrick to the IRA. The Diamond Note is from Diamond to RE-EX of Ohio, Inc.
Plaintiffs' argument that this was an elaborate transaction by which Mr. Ressler borrowed from this own IRA is contradicted by the fact that the maker or obligor on the Diamond Note is Diamond, not Mr. Ressler.
The crux of the problem with Plaintiffs' argument is that it would require the Court to disregard the corporate form of Diamond and RE-EX of Ohio, Inc., when there is presently no evidentiary basis to do so. Mr. Patrick's affidavit simply asserts, in conclusory fashion, that Diamond is the alter ego of Mr. Ressler. There is no showing that Diamond failed to maintain corporate formalities, such as failing to keep corporate records, hold shareholder meetings, or file tax returns. There is no evidence that the corporation had no separate existence, as would be necessary to pierce the corporate veil.
* * *
Under the terms of the Note, Mr. Patrick's obligation to pay the Note is unconditional. Here, the parol evidence rule applies because Plaintiffs seek to contradict the terms of the Note by imposing conditions on the obligation to repay.
In addition, even if Plaintiffs' theory is correct, that the transaction was a roundabout way to withdraw money from Mr. Ressler's IRA without negative tax consequences, there has been no showing that such a transaction would be illegal or otherwise improper. Avoiding negative tax consequences is a motive in the structuring of many business transactions.
Both Mr. Ressler and Mr. Patrick are experienced, sophisticated businessmen. There has been no showing that either was deceived about the nature of the transaction. Rather, the transaction was documented and signed off on by both parties.
 {¶ 20} We initially address appellees' argument that appellants waived their right to appeal the trial court's adoption of the magistrate's decision of August 6, 2002, based upon the contention that appellants failed to timely object to that decision. Appellees cite the fact that appellants did not file objections to the magistrate's August 6, 2002 decision until September 10, 2002, well past the 14-day requirement of Civ. R. 53(E)(3). Instead, appellants filed, on August 19, 2002, a "motion to reconsider" the magistrate's decision rendered on August 6. Following the magistrate's denial of appellants' motion for reconsideration, appellants filed objections to the magistrate's decision on September 10, 2002. The trial court, in its January 6, 2003 decision, addressed appellees' contention that appellants' objections were filed out of rule, holding that appellants' "untimely filing of objections did not prejudice [appellees] because they were aware of the substance of the objections through the motion for reconsideration, which was filed within fourteen days of the magistrate's decision."
 {¶ 21} Appellees argue that the failure to timely file objections is "akin to a jurisdictional issue." This court, however, has held that "objections are in the nature of a motion under Civ. R. 53(E)(2), and that the fourteen-day filing period set forth in Civ. R. 53(E)(2) may be extended in the manner prescribed by Civ. R. 6(B)." Eitel v. Eitel (Aug. 30, 1994), Franklin App. No. 93APF12-1745, citing Conroy v. Conroy (Aug. 12, 1993), Franklin App. No. 93AP-27 ("[i]f objections are filed after the Civ. R. 53(E)(2) time period, but prior to the trial court's entry of judgment thereon, that court may consider them sua sponte"). See, also,Baker v. Baker (1990), 68 Ohio App.3d 402, 405 ("[i]f * * * objections are filed after the expiration of the fourteen-day period allowed by Civ. R. 53[E][2], but before the court's entering final judgment, the court may consider them sua sponte, and such consideration will be construed as the granting of leave to file late objections pursuant to Civ. R. 60[B]").
 {¶ 22} In the instant case, the trial court exercised its discretion and considered the objections, albeit untimely, prior to filing an entry of final judgment, and we find unpersuasive appellees' contention that appellants waived their right to appeal the trial court's adoption of the magistrate's August 6, 2002 decision.
 {¶ 23} We note, however, that many of the arguments set forth by appellants under their first assignment of error were never raised in their objections to the magistrate's August 6, 2002 decision (or in the motion for reconsideration filed within 14 days of the magistrate's decision).[1] Specifically, in their objections to the magistrate's August 6 decision, appellants raised the following seven objections, summarized as follows: (1) the magistrate erred in finding that Ressler is entitled to summary judgment since Re-Ex "is not and was never a party to this action"; (2) the court lacks subject-matter jurisdiction over the foreclosure claims because Ressler "failed to join an indispensable party" (3) the doctrines of res judicata and collateral estoppel bar the magistrate from finding that Diamond is not the alter ego of Ressler; (4) plaintiffs have not waived any claim that Ressler lacks standing to enforce a mortgage recorded by Lincoln Trust; (5) Lincoln Trust "has stipulated that it has no interest in the Note and Mortgage"; (6) Ressler does not have standing to assert a foreclosure claim against plaintiffs; and (7) the magistrate erred in finding that a custodian of an IRA account is an agent of the account.
 {¶ 24} Although now raised as issues on appeal, appellants' objections did not challenge the magistrate's determinations as to the applicability of the parol evidence rule,[2] or that the notes were independent, nor did appellants contend that the "leading objective" of Ressler's promise to repay his IRA was to promote his own interests or the interests of Diamond (such that Ressler's alleged oral promise would fall outside the statute of frauds). Appellants also raise a number of "liability" issues that were never challenged by way of objections to the magistrate's August 6 decision, including arguments that the trial court: (1) erred in entering judgment on the promissory note absent a finding that appellants were in default; (2) erred in granting summary judgment where appellants were simply accommodation makers; (3) erred in granting summary judgment where Ressler's "self-financing agreement" was undertaken for the illegal purpose of income tax evasion; (4) erred in granting summary judgment where Ressler made false representations that he would supply the source of funds for the note; and (5) erred in entering judgment on the promissory note absent a finding there was an acceleration of the debt.
 {¶ 25} Civ. R. 53(E)(3)(d) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion of law under this rule." Accordingly, although the Ohio Rules of Civil Procedure allow parties to bring errors of law or fact made by a magistrate to the attention of the trial court so they may be corrected before the trial court enters judgment, "if a party fails to object to a magistrate's finding or conclusion, that party waives the right to challenge the finding or conclusion on appeal." Brott Mardis Co. v. Camp (2001),147 Ohio App.3d 71, 78. See, also, State ex rel. Booher v. Honda ofAm. Mfg., Inc. (2000), 88 Ohio St.3d 52, 53-54 ("Civ. R. 53[E][3][b] prohibits a party from `assign[ing] as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule'"). Thus, while appellants are entitled to a de novo review of the magistrate's findings and conclusions to which objections are made, their attempt to challenge issues never raised by way of objection is subject to waiver. Stempuzisv. Hildebrand, Franklin App. No. 03AP-86, 2003-Ohio-6060 (noting that, although appellate review of summary judgment is de novo, failure to file objections to magistrate's decision waived arguments relating to decision on appeal).
 {¶ 26} Even assuming, however, that appellants had properly challenged the magistrate's findings and conclusions with respect to the applicability of the parol evidence rule, and, thus, preserved this issue for appellate review, we would find no merit with appellants' parol evidence argument. As noted, appellants contend that the Lincoln Trust note was part of an elaborate scheme between the parties to allow Ressler to borrow money from his IRA without suffering tax consequences.
 {¶ 27} The parol evidence rule is a rule of substantive law, "designed to protect the integrity of final, written agreements." Bankers TrustCo. v. Wagner (Dec. 28, 2001), Allen App. No. 1-01-17. In general, "[t]he parol evidence rule states that `absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4.
 {¶ 28} An exception to this rule is the "collateral agreement" rule, whereby "parol evidence can be used to prove the existence of `collateral agreements' made prior to or contemporaneous with a written agreement[.]"Pingue v. Durante (May 9, 1996), Franklin App. No. 95APG09-1241. However, under this exception, "any such collateral agreement must not contradict the terms of the written agreement, and the agreement must be one that would naturally be omitted from the written instrument." Id. Further, the parol evidence rule does not preclude a party from introducing extrinsic evidence to show that he or she was fraudulently induced to enter into a written agreement, but such party "may not circumvent the rule by claiming that the fraudulent inducement was a prior or contemporaneous oral agreement the terms of which contradict the written agreement." Woods v. Cobbins, Montgomery App. No. 20295,2004-Ohio-5767, at ¶ 20. Accordingly, "`[u]nless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.'" Id., quoting Galmish, at 30.
 {¶ 29} In the instant case, appellants seek to show that a contemporaneous oral agreement was entered between Ressler and Patrick, whereby Ressler promised that payments on the Diamond note would be made to supply the funds for Re-Ex's payment on the Lincoln Trust note. Appellants maintain that the parol evidence rule is not violated where they seek to show that the source of funding for the payment on the Lincoln Trust note, through payments under the Diamond note, was not addressed or otherwise identified in the text of the notes themselves and where, it is argued, the agreement does not contradict any terms of the notes.
 {¶ 30} In general, "[a] promissory note is a signed, written, and unconditional promise to pay a certain sum of money." Trefz v. Groves
(Aug. 24, 2001), Highland App. No. 00CA19. In the instant case, the language of the Lincoln Trust note is unambiguous; under the terms of the note, signed by Patrick, the borrowers promised to pay the sum of $125,000 to the lender, "Lincoln Trust Company, custodian FBO John Ressler," at a stated interest rate of 8.5 percent, beginning on January 1, 1998, and to continue until the maturity date of December 31, 2004. The note provides for payment without reference to any source; further, despite the lack of an integration clause, the note is, at minimum, a partially integrated agreement between the borrowers and lender, and, therefore, parol evidence is inadmissible to add terms inconsistent with the writing. TRINOVA Corp. v. Pilkington Bros., P.L.C. (1994),70 Ohio St.3d 271, 276 ("in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms").
 {¶ 31} Upon review, we agree with the magistrate's determination that the Lincoln Trust note contained an unconditional promise to pay. We further agree that parol evidence offered by appellants to show their obligation to make payments was conditional based upon a prior or contemporaneous agreement, i.e., that appellants' failure to pay on the Lincoln Trust note would be excused if Diamond (a non-party to the Lincoln Trust note) failed to make payments on a separate note, contradicts or varies the express terms of the Lincoln Trust note. See, e.g., Berg v. Birnbaum (N.Y. 1946), 68 N.Y.S.2d 312 (in action on notes made by defendant pursuant to written agreement whereby defendant purchased one-half of plaintiff's interest in contract to purchase corporation, and assumed one-half of plaintiff's obligation to loan money to corporation, admission of oral evidence that defendant would not be required to pay notes except out of money he would receive from corporation as commissions was error; such testimony varied the terms of the written agreement); Wooldridge v. Groos Natl. Bank (Tex.Civ.App. 1980), 603 S.W.2d 335, 341 (maker of promissory note could not present extrinsic evidence that payee had stated note would not be declared due and payable until maker received payment of loans he made to two other parties; such evidence contradicts unconditional promise to pay and "clearly operates to add to, [take away from], and vary the terms of the note"); Bower v. Weisman (S.D.N.Y. 1987), 674 F.Supp. 113 (rejecting introduction of extrinsic evidence that, under oral agreement, all amounts owed by plaintiff under note were to be offset by amounts owed to plaintiff under a contemporaneously executed consulting agreement; parol evidence rule applies to preclude testimony as to oral agreement at variance with terms of obligation under promissory note).
 {¶ 32} In the instant case, as noted by the magistrate, the parties to the transaction were sophisticated businessmen and, had they so desired, could have included language providing that payment on the Lincoln Trust note was to be made only out of proceeds from a particular source; however, in the absence of such a funding provision, or evidence of fraud or mistake, we find no error with the magistrate's determination that parol evidence is inadmissible to change the nature of an unconditional promise to pay on the promissory note. See Holzworth Sebastian v.Koch, Mayer Goldsmith (1875), 26 Ohio St. 33, 37 (parol evidence inadmissible to contradict note or attach parol conditions; note contained unconditional promise to pay its full amount, and "defendants sought, by parol proof, to change this into a promise to pay on condition the plaintiffs would furnish goods to Doering, and to pay at such time or times as he might be able to pay. This they could not be allowed to do, without violation of one of the first and plainest principles of evidence"); Brown v. Spofford (1877), 95 U.S. 474, 482 ("[p]arol evidence of an agreement, made contemporaneously with a promissory note which contains an absolute promise to pay at a specified time, is not admissible * * * to provide for the payment out of any particular fund, or in any other way than that specified in the instrument, or to make the payment depend upon condition"); Murphy v. Craig (C.A.9, 1928), 28 F.2d 963,964 ("[t]hat the maker of a promissory note for the payment of sum certain, on a day certain, will not be heard to say that the note is payable out of a particular fund only * * * is too firmly established to require extended discussion").
 {¶ 33} Appellants' reliance upon Your Financial Community of Ohio,Inc. v. Emerick (Oct. 21, 1997), Franklin App. No. 97APE04-501, involving a subsequent oral modification of a written contract, is misplaced. At issue in the instant case is the applicability of the parol evidence rule in the context of a purported contemporaneous oral agreement; unlike the facts of the instant case, however, the parol evidence rule, which "proscribes evidence to vary the terms of a written agreement by showing prior or contemporaneous oral statements, * * * has no application to evidence concerning subsequent oral modifications of a written agreement[.]" Conklin v. Conklin (May 28, 1993), Delaware App. No. 92CAE07023.
 {¶ 34} Accordingly, because we agree with the trial court's determination that evidence of a purported contemporaneous oral agreement is inadmissible to vary the terms of the promissory note, such evidence does not raise an issue of material fact.
 {¶ 35} Appellants further contend, under their first assignment of error, that the trial court erred in striking portions of Patrick's affidavit testimony. The record indicates that, on April 29, 2002, appellees filed a motion to strike the affidavit of Patrick, raising six specific objections, including objections that certain conclusory statements by Patrick were insufficient to defeat appellees' motion for summary judgment, and that Patrick's claims regarding a purported oral agreement that altered the repayment terms of the Lincoln Trust note was barred by the parol evidence rule.
 {¶ 36} In the magistrate's August 6, 2002 decision, the magistrate granted in part the motion to strike. With respect to the first and second objections, the magistrate determined that certain averments by Patrick constituted unsupported allegations and legal conclusions, and, therefore, refused to give such averments consideration.
 {¶ 37} Appellants argue that the trial court was required to consider as true Patrick's claim that Diamond is the alter ego of Ressler. In his affidavit, Patrick averred the following: "I believe Defendant Diamond Industries, Inc. is, in fact, the alter ego of John S. Ressler." Appellants maintain that the statement goes to Patrick's perceptions, and should not have been stricken.
 {¶ 38} Under Ohio law, in order to disregard the corporate form and hold individual shareholders liable for corporate misdeeds, there must be evidence of: (1) control over the corporation so complete that the corporation has no separate mind, will or existence of its own; (2) control over the corporation exercised in such a manner as to commit fraud or an illegal act against the individual seeking to disregard the corporate entity; and (3) injury or unjust loss resulting to the plaintiff from such control and wrong. Belvedere Condominium Unit Owners'Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 289.
 {¶ 39} In the present case, while the magistrate ruled on the motion to strike in its August 6, 2002 decision, appellants did not file specific objections to the magistrate's ruling. Even assuming, however, that appellants had raised objections to that ruling, we would agree with the magistrate that Patrick's conclusory allegation in his affidavit as to his belief of an alter ego relationship, absent other factual allegations to support this statement, is insufficient to establish a genuine issue of material fact on this issue.
 {¶ 40} Appellants also assert that the trial court erred in rendering final judgment when it failed to rule on Patrick's counterclaim. Appellants maintain that this matter must be remanded to the trial court for further proceedings on the counterclaim. We disagree.
 {¶ 41} Appellants' counterclaim sought a declaratory judgment that Diamond was the alter ego for Ressler, and that Ressler did not observe corporate formalities. As noted above, the magistrate addressed and rejected this contention in his August 6, 2002 decision. In granting summary judgment in favor of appellees, and adopting the magistrate's decision, the trial court's judgment implicitly rejected appellants' alter ego claim, and necessarily disposed of the issues raised in appellants' counterclaim. See Security Natl. Bank Trust Co. v. Jones
(July 6, 2001), Clark App. No. C.A. 2000-CA-59 (although better practice would be for trial court to have expressly addressed counterclaim, any error is harmless as court, in granting summary judgment in favor of appellee, necessarily rejected appellant's counterclaim implicitly where appellee's claim was logically inconsistent with appellant's counterclaim). See, also, Brookridge Party Center, Inc. v. Fisher Foods,Inc. (1983), 12 Ohio App.3d 130, 135, fn. 4 (while court order makes no express disposition of builder's counterclaim against grocer, adjudication in grocer's favor implicitly denies builder's counterclaim).
 {¶ 42} Based upon the foregoing, the trial court properly concluded there were no genuine issues of material fact with respect to appellants' liability for repayment of the promissory note, and appellants' first assignment of error is without merit and is overruled.
 {¶ 43} Appellants' second and third assignments of error are interrelated and will be considered together. Under the second assignment of error, appellants assert that the trial court erred, as a matter of law, in awarding appellees attorney fees. Under the third assignment of error, appellants argue that there is a lack of evidence in the record to support the trial court's final judgment entry awarding damages, including amounts for unpaid interest, accrued penalties, escrowed principal and interest payments.
 {¶ 44} Regarding the issue of attorneys' fees, appellants contend that, on November 25, 1997, at the time the promissory note was executed, Ohio law did not permit an award of attorney fees for default on a note. Appellants further contend that, although R.C. 1301.21 now allows for the award of attorney fees on a contract of indebtedness, the statute should be applied prospectively, and that a retroactive application would be unconstitutional.
 {¶ 45} R.C. 1301.21 states in part as follows:
(A) As used in this section:
(1) "Contract of indebtedness" means a note, bond, mortgage, conditional sale contract, retail installment contract, lease, security agreement, or other written evidence of indebtedness, other than indebtedness incurred for purposes that are primarily personal, family, or household.
* * *
(B) If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.
 {¶ 46} Although the statute at issue is relatively recent, at least one court has had occasion to consider its application in a situation where the contract of indebtedness was entered prior to the statute's enactment. Under the facts of New Market Acquisitions, LTD. v. PowerhouseGym (S.D.Ohio 2001), 154 F.Supp.2d 1213, the plaintiff, New Market Acquisitions ("New Market") filed suit against its tenant, ESB One Berger Enterprises, Inc. ("ESB"), for breach of a commercial lease agreement, as well as against William, Ibitsam, Norman and Nouha Dabish, the personal guarantors on the lease. The original lease, entered between ESB and NYLIFE Realty Partner I ("NYLIFE"), was signed on September 27, 1996. William Dabish agreed to sign a personal guaranty on the lease, and he did so on October 1, 1996. In May 1997, NYLIFE assigned the lease to New Market. ESB subsequently defaulted on the lease, and New Market filed suit in September 1998, naming as defendants ESB and the Dabishes. Both the lease and the guaranty contained provisions requiring the lessees and guarantor to pay reasonable attorneys' fees in the event of default. As part of a settlement agreement, New Market specifically released ESB from liability for attorneys' fees, but New Market sought attorneys' fees against the Dabishes.
 {¶ 47} The Dabishes argued that, under Ohio law, attorneys' fee provisions in commercial leases were unenforceable and contrary to public policy, citing Miller v. Kyle (1911), 85 Ohio St. 186. The court in NewMarket, however, noted that, on May 11, 2000, "the Ohio General Assembly passed a bill concerning enforcement of commitments to pay attorneys' fees," R.C. 1301.21. In construing the language of that statute, the NewMarket court, at 1226, held in pertinent part:
Uncodified section 3 of 1999 H. 292, the applicable bill, states: "Section 1301.21 of the Revised Code applies only to commitments to pay attorneys' fees that are included in contracts of indebtedness that areenforced, through judicial proceedings or otherwise, on and after the effective date of this act." H.R. 292, 123rd Leg. (Ohio 2000). The effective date of the bill was May 11, 2000. This Court finds the operational definition of the phrase "enforced, through judicial proceedings" to be the day judgment is rendered by the Court. Thus, this statute is applicable in this instance, as judgment will be rendered after May 11, 2000.
 {¶ 48} Similarly, in the instant case, while the promissory note was executed in 1997, final judgment was rendered subsequent to May 11, 2000. Applying the reasoning of New Market, we find unpersuasive appellants' contention that attorney fees are unavailable under R.C. 1301.21
based upon the statute's effective date.
 {¶ 49} Appellants' further contention that the award of attorneys' fees is unconstitutionally retroactive is unpersuasive. Section 28, Article II, of the Ohio Constitution, prohibiting the General Assembly from enacting retroactive laws, "has consistently been interpreted to refer to statutes affecting substantive rights and not laws which are simply remedial in nature." Cleveland Electric Illuminating Co. v.Alexander (Nov. 29, 1979), Cuyahoga App. No. 39493. See, also, Bielat v.Bielat (2000), 87 Ohio St.3d 350, 354. ("[a] purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even when it is applied retroactively").
 {¶ 50} Under Ohio law, attorney fees are in the nature of costs, and statutes relating to costs are remedial. State ex rel. Beacon JournalPublishing Co. v. Ohio Dept. of Health (1990), 51 Ohio St.3d 1, 3
(holding that statute authorizing attorney fees to litigants successfully suing to obtain public information did not violate constitutional provision against retroactive legislation). See, also, Flory v. Cripps
(1937), 132 Ohio St. 487, 493 (amended statute allowing for payment of reasonable attorney fees in connection with sale of realty, subsequent to execution of mortgage, did not result in impairment of contract; "[t]his is a remedial provision and the statute in force at the time of the rendition of the judgment is controlling").
 {¶ 51} While we do not find merit with appellants' contention that imposition of attorneys' fees would be unconstitutional, we are unable to ascertain, from the record before us, how the trial court determined the reasonableness, as well as amount ($16,879.46), of the attorney fee award. Specifically, the record does not indicate that the court conducted a hearing on the issue of attorney fees, and, absent other supporting documentary evidence (affidavits, etc.) or explanation by the court as to how it assessed the award, we are unable to meaningfully review the court's assessment. We therefore vacate the attorneys' fee award and remand for a determination of this issue, including an explanation of the basis for the award.
 {¶ 52} Similar to the court's award of attorney fees in the judgment entry, we are unable to meaningfully review the court's assessment of the amounts awarded for unpaid principal and interest on the note, as well as amounts for accrued penalties, escrowed principal and interest payments. While the record contains several exhibits indicating unpaid amounts on the promissory note, it is not clear from the court's entry how various calculations, including principal and interest due on the note, were determined.[3] Thus, while we find that the trial court properly granted summary judgment in favor of appellees with respect to liability on the note, factual issues remain regarding the monetary award portion of the judgment, and a remand is necessary to allow the trial court to re-examine the award, including an explanation of the calculations.
 {¶ 53} Accordingly, appellants' second and third assignments of error are sustained to the extent provided above, but are otherwise overruled.
 {¶ 54} Based upon the foregoing, appellants' first assignment of error is overruled, appellants' second and third assignments of error are sustained in part and overruled in part, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment affirmed in part, reversed in part;
 cause remanded.
Petree and Sadler, JJ., concur.
[1] In their motion for reconsideration, appellants argued that: (1) they had not waived any claim that Ressler lacks standing to enforce a mortgage recorded with Lincoln Trust; (2) Lincoln Trust, the legal holder of the note and mortgage, "has stipulated that it has no interest in the Note and Mortgage"; and (3) Ressler lacks standing to assert a foreclosure claim against appellants.
[2] Appellants first raised the issue of the parol evidence rule in their December 2, 2003 "motion to reconsider" the magistrate's August 6, 2002 decision. However, the trial court, in finding appellants' motion not properly before it, noted in its January 9, 2004 decision, "[t]here is no provision for the referring court to `reconsider' the magistrate's decision. Instead, Civ. R. 53 permits a party to raise objections to the magistrate's decision."
[3] We note that appellees, in their appellate brief, have not responded to the arguments raised under appellants' third assignment of error.